[Cite as *Delaware Cty. Child Support Enforcement Agency v. Kise*, 2021-Ohio-915.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| DELAWARE COUNTY CHILD SUPPORT ENFORCEMENT AGENCY | : | JUDGES: |
| | : | |
| Appellant | : | Hon. Craig R. Baldwin, P.J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | Hon. Earle E. Wise, Jr., J. |
| | : | |
| STEPHEN O. KISE | : | |
| | : | |
| Plaintiff-Appellee | : | Case No. 19 CAF 12 0064 |
| | : | |
| and | : | |
| | : | |
| JUDITH A. KISE | : | |
| | : | |
| Defendant-Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Delaware County Court
of Common Pleas, Domestic Relations
Division, Case No. 02 DR B 04 0177

JUDGMENT:     REVERSED AND REMANDED

DATE OF JUDGMENT ENTRY:     March 22, 2021

APPEARANCES:

For Appellant:

TANYA H. KIDD
145 North Union St., 3rd Floor
Delaware, OH 43015

For Plaintiff-Appellee:

ELIZABETH N. GABA
1231 E. Broad St.
Columbus, OH 43205

For Defendant-Appellee:

CALEB CARSON III
144 E. Center St.
Marion, OH 43302

*Delaney, J.*

{¶1} Appellant Delaware County Child Support Enforcement Agency appeals the November 27, 2019 judgment entry of the Delaware County Court of Common Pleas, Domestic Relations Division.

**FACTS AND PROCEDURAL HISTORY**

{¶2} On June 27, 2003, Appellee Judith A. Kise ("Wife") and Appellee Stephen O. Kise ("Husband") were divorced by Agreed Judgment Entry Decree of Divorce in the Delaware County Court of Common Pleas, Domestic Relations Division. The Decree ordered Husband to pay spousal support in the amount of $1,900.00 per month directly to Wife for 177 months, effective May 1, 2003. The trial court retained jurisdiction to modify the amount, duration, and payment of spousal support.

{¶3} By judgment entry filed January 5, 2007, the trial court ordered Husband to pay all future spousal support payments and arrearage liquidation payments through Appellant Delaware County Child Support Enforcement Agency ("DCCSEA"). Husband's spousal support arrearage was $29,000 as of November 29, 2006. The trial court ordered Husband to liquidate the arrearage at a rate of $1,000 per month. Upon receipt of the trial court's order, the DCCSEA inputted all party and order information into the Support Enforcement Tracking System ("SETS"). The DCCSEA collected and disbursed the spousal support payments, maintained records, and charged the statutory two percent processing charge.

{¶4} Husband and Wife continued to litigate the issue of spousal support. Through a judgment entry filed December 31, 2008, the trial court determined Husband's spousal support arrearage was $50,543.98 as of December 17, 2007. Husband was

ordered to liquidate the arrearage at a rate of $380 per month. The DCCSEA adjusted SETS to accurately reflect the changes made to the order.

{¶5} On November 9, 2010, the trial court issued a judgment entry finding Husband was in contempt for failure to comply with the spousal support order. Husband's spousal support arrearage was $109,439.80 plus the two percent processing fee.

{¶6} Husband and Wife entered into an Agreed Order on June 29, 2011. Husband was ordered to pay spousal support in the amount of $400 per month and ordered to pay $200 per month toward the spousal support arrearage through the DCCSEA. Upon receipt of the entry, the DCCSEA adjusted the SETS to accurately reflect the changes made to the spousal support order.

{¶7} On June 8, 2017, the trial court reactivated the divorce proceeding upon Wife's motion to show cause regarding spousal support. The DCCSEA was ordered to complete and disseminate to Husband and Wife's counsel an audit of the spousal support account.

{¶8} On January 31, 2018, the DCCSEA took administrative action to terminate the current spousal support effective January 31, 2018 because 177 months had lapsed. On April 19, 2018, the DCCSEA provided a certified audit including all spousal support arrearages and administrative processing charge arrearages.

{¶9} On May 3, 2019, the DCCSEA received a subpoena to appear on June 5, 2019 for trial. After reviewing the trial court docket, the DCCSEA discovered the trial date had been vacated and the trial court had ordered Husband and Wife to mediation.

{¶10} On July 17, 2019, the trial court filed a Judgment Entry In Court Settlement. The judgment entry stated the trial court held an ad hoc Final Hearing on May 23, 2019

regarding all outstanding post-decree motions. Husband and Wife participated in trial court mediation services and reached a full agreement on all outstanding issues and motions. Husband and Wife agreed that by May 23, 2019, Husband shall pay Wife $13,000 in full satisfaction of all claims and counterclaims pertaining to spousal support, which the trial court noted "was an arrears only matter." (Judgment Entry, July 17, 2019).

{¶11} The judgment entry stated in pertinent part to this appeal:

IT IS HEREBY ORDERED that The Lump Sum Payment that resolves the disputed arrearages is specifically authorized by the Court and shall be paid direct from the Plaintiff to the Defendant (contemplated as through a third party) on May 23, 2019. CSEA shall be directed to adjust its records accordingly effective the date of this entry to reflect that any arrears or credits on the above-referenced spousal support account – including those regarding the spousal support account and the processing fee be reduced to zero. Should CSEA require an acknowledgement from one or both of the parties they shall cooperate, however the directive from the Court should be sufficient to effectuate the reduction of the arrears to zero and close the account.

(Judgment Entry, July 17, 2019).

{¶12} On July 22, 2019, the DCCSEA filed a motion for relief from judgment pursuant to Civ.R. 60(B) requesting relief from the July 17, 2019 judgment entry. It argued the trial court erred when it ordered the processing charges to zero and failed to provide the DCCSEA with notice of the proceedings and the opportunity to be heard. In support

of its motion, the DCCSEA attached a certified audit of the spousal support order that reflected Husband owed $4,142.01 in processing charge arrearages as of April 30, 2019.

{¶13} Without a hearing, the trial court denied the motion for relief from judgment on November 27, 2019. It is from this judgment that the DCCSEA now appeals.

{¶14} Neither Husband nor Wife filed an appellate brief.

## ASSIGNMENTS OF ERROR

{¶15} The DCCSEA raises two Assignments of Errors:

{¶16} "I. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ALLOWED HUSBAND AND WIFE TO WAIVE THE ADMINISTRATIVE 2% PROCESSING CHARGE OWED TO THE DELAWARE COUNTY CHILD SUPPORT ENFORCEMENT AGENCY.

{¶17} "II. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED DCCSEA'S MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO CIVIL RULE 60(B) BECAUSE THE DELAWARE COUNTY CHILD SUPPORT ENFORCEMENT AGENCY WAS NEVER PROVIDED NOTICE, THE OPPORTUNITY TO BE HEARD, OR THE OPPORTUNITY TO OBJECT TO THE UNDERLYING ORDER TO WAIVE PROCESSING CHARGES."

## ANALYSIS

### I. and II.

{¶18} We consider the two Assignments of Error raised by the DCCSEA together because they are interrelated. The DCCSEA contends the trial court abused its discretion when it ordered the DCCSEA to reduce Husband's processing fee arrearage to zero and to deny the DCCSEA's motion for relief from that judgment. We agree.

**Civ.R. 60(B)**

{¶19} A motion for relief from judgment under Civ.R. 60(B) lies in the trial court's sound discretion. *Griffey v. Rajan*, 33 Ohio St.3d 75, 514 N.E.2d 1122 (1987). To find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). The DCCSEA bases its motion on 60(B)(5). In *GTE Automatic Electric Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146, 351 N.E.2d 113 (1976), paragraph two of the syllabus, the Supreme Court of Ohio held the following:

> To prevail on a motion brought under Civ.R. 60(B), the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken.

{¶20} The DCCSEA argued it was entitled to relief under Civ.R. 60(B)(5). Civ.R. 60(B)(5) allows the trial court to relieve a party from a final judgment for "any other reason justifying relief from the judgment." Civ.R. 60(B)(5) operates as a catch-all provision and "reflects 'the inherent power of a court to relieve a person from the unjust operation of a judgment.'" *Maggiore v. Barensfeld*, 5th Dist. Stark No. 2011CA00180, 2012-Ohio-2909, 2012 WL 2415184, ¶ 35 citing *Dutton v. Potroos*, 5th Dist. Stark No. 2010CA00318, 2011-Ohio-3646, 2011 WL 3057612, at ¶ 49. It is reserved for "extraordinary and unusual case

[s]," *Myers v. Myers*, 9th Dist. Summit No. 22393, 2005-Ohio-3800, 2005 WL 1763608, at ¶ 14, and "is not a substitute for the enumerated grounds for relief from judgment [.]" *Id.*

{¶21} In examining the three *GTE* factors, we first find that the DCCSEA's motion for relief from judgment was made in a reasonable time. It was filed five days after the trial court issued its judgment entry waiving Husband's processing fee arrearage. We next determine whether the DCCSEA has a meritorious claim or defense to present if relief is granted.

### The Meritorious Claim and the Processing Fee

{¶22} The Child Support Enforcement Agency ("CSEA") was "established pursuant to R.C. 3125.03 so that it could enforce support orders, oversee the collection of support obligations, and perform other actions associated with child support enforcement." *Saari v. Lorain Cty. Child Support Enf't Agency*, 9th Dist. Lorain No. 10CA009905, 2011-Ohio-2198, 2011 WL 1782102, ¶ 7. Under certain circumstances, the CSEA must also collect spousal support. *Id.* citing Ohio Adm.Code 5101:12–1–10.

{¶23} To perform its statutorily mandated duties to enforce support orders and oversee the collection of support obligations, the General Assembly authorized the CSEA to collect a processing charge. R.C. 3119.27(A) states:

> A court that issues or modifies a court support order, or an administrative agency that issues or modifies an administrative child support order, shall impose on the obligor under the support order a processing charge in the amount of two per cent of the support payment to be collected under a support order. No court or agency may call the charge a poundage fee.

R.C. 19.28 next states:

> (A) As used in this section, "current support payment" means the amount of support due an obligee that an obligor is required to pay in a particular payment for the current month as specified in a support order. "Current support payment" does not include payments on arrearages under the support order.
>
> (B) The obligor shall pay the amount imposed pursuant to section 3119.27 of the Revised Code with every current support payment, and with every payment on arrearages.

{¶24} The purpose of a processing fee is to compensate officials for the risk of handling and disbursing money. *Tuscarawas Cty. Child Support Enf't Agency (CSEA) v. Burger*, 5th Dist. Tuscarawas No. 2000AP110074, 2001-Ohio-1440, *2 citing *Granzow v. Bureau of Support*, 54 Ohio St.3d 35, 38, 560 N.E.2d 1307 (1990). The two percent processing charge is part of a uniform state practice of support order enforcement mandated by federal and state law. R.C. 3125.07 codifies the directive to create the Support Enforcement Tracking System ("SETS") used by all Ohio county child support enforcement agencies:

> The department of job and family services shall establish and maintain a statewide, automated data processing system in compliance with Title IV-D of the "Social Security Act," 88 Stat. 2351 (1975), 42 U.S.C. 651, as amended, to support the enforcement of child support that shall be implemented in every county. Every county shall accept the automated system and, in accordance with the written instructions of the department

for the implementation of the automated system, shall convert to the automated system all records that are maintained by any county entity and that are related to any case for which a local agency is enforcing a child support order in accordance with Title IV-D of the "Social Security Act," 88 Stat. 2351 (1975), 42 U.S.C. 651, as amended.

{¶25} The above-cited law demonstrates it is well-settled that the two percent processing fee collected by an CSEA is statutorily mandated. The issue presented in this case is whether the DCCSEA had a meritorious claim or defense that the trial court could not order the DCCSEA to waive a processing fee arrearage accrued by Husband. We examine two cases that addressed the issue of whether a CSEA was entitled to collect an additional two percent in processing charges on a processing fee arrearage. These cases provide guidance as to whether a trial court can order the DCCSEA to reduce Husband's processing fee arrearage to zero.

{¶26} In *Tuscarawas Cty. Child Support Enf't Agency (CSEA) v. Burger*, 5th Dist. Tuscarawas No. 2000AP110074, 2001-Ohio-1440, the CSEA filed contempt actions against multiple obligors under a child support order due to child support arrearages. The trial court ordered additional monthly payment toward arrearages, but ultimately declared in each case the CSEA could not collect processing fees on any support arrearage payments, including those attributable to prior unpaid processing fees. *Id.* at *1. The trial court used the following language in several of the cases:

Thus, the Court finds that although the Revised Code gives the court and administrative agency authority to account for past due processing fees, neither the Revised Code nor the O.A.C. authorizes the collection of an

additional processing fee on the past due processing fee. The Court finds that the law does not allow for cumulative processing fees to be charged upon past due support. The accumulation of processing fees could result in an unconscionable, exponential obligation for which there is no clear legislative intent and which this court will not endorse.

*Id.* at *1.

{¶27} On appeal, this Court examined the meaning of R.C. 2301.35, which was the predecessor statute to R.C. 3119.27 and R.C. 3119.28. In S.B. 180, 2000 Ohio Laws 291, the General Assembly repealed R.C. 2301.35 and enacted R.C. 3119.27 and R.C. 3119.28. The relevant content of R.C. 2301.35 was split between the two statutes but the language remained the same, and the relevant language has essentially been unchanged since we examined it in *Burger*. R.C. 2301.35(G)(1) stated:

(G)(1) A court or administrative agency that issues or modifies a support order shall impose a processing charge that is the greater of two per cent of the support payment to be collected under a support order or one dollar per month on the obligor under the support order. The obligor shall pay the amount with every current support payment, and with every payment on arrearages. No court or agency may call the charge a poundage fee.

{¶28} Upon our appellate review of the statutory language, the majority in *Burger* found the trial court erred when it disallowed the collection of statutory processing charges on monthly arrearage payments. *Id.* at *3. We first disagreed with the trial court's statutory interpretation of R.C. 2310.35(G)(1):

Following its review of various provisions in the Ohio Revised Code and Ohio Administrative Code, the trial court found that it could not locate a definition of "arrearages" as used in 2301.35(G)(1). However, the court concluded that "[t]he obligor must pay the processing charge on the support, whether the support is paid on time (current) or paid late (past-due);" but that no authority exists for assessing a "second" processing fee on the support amount if paid past-due. * * * Courts are guided by the axiom that statutes should be construed to avoid unreasonable consequences. *See State ex rel. Dispatch Printing v. Wells* (1985), 18 Ohio St.3d 382, 384. The trial court's reading of R.C. 2301.35(G)(1) effectively altered the second sentence from conjunctive to disjunctive; i.e., the phrase "and with every payment on arrearages" was essentially construed as "or with every payment on arrearages," (if not previously paid with current support.) Generally, " * * * we must presume the legislature means what it says; we cannot amend statutes to provide what we consider a more logical result." *State v. Virasayachack* (2000), 138 Ohio App.3d 570, 574. Additionally, the trial court effectively read "two per cent of the support payment" in the first sentence of R.C. 2301.35(G)(1) as referring to a current support order only. In construing a statute, a court may not add or delete words. *State ex rel. Sears, Roebuck & Co. v. Indus. Comm.* (1990), 52 Ohio St.3d 144, 148; *State v. Hughes* (1999), 86 Ohio St.3d 424, 427. As CSEA points out, the aforementioned second sentence of R.C. 2301.35(G)(1) was originally added to the statute, via amendment, on March 29, 1988. Although the

second sentence has from its onset contained the phrase "current support," the General Assembly never chose to amend "support payment" or "support order" from the first sentence in like fashion. Indeed, at least one appellate court has held that a "child support order" includes an order requiring periodic payments for past-due support. *See Treadway v. Ballew* (Oct. 7, 1998), Summit App.No. 18984, unreported.

*Id.* at *2

{¶29} In interpreting R.C. 2301.35(G)(1), we next examined R.C. 5101.325(B)(1). The content of R.C. 5101.325(B)(1) is now codified in R.C. 3121.56 and R.C. 3121.58, with no relevant change in wording.

Furthermore, at the time of the cases sub judice, the Ohio Department of Job and Family Services ("ODJFS") was statutorily charged in R.C. 5101.325(B)(1) with maintaining an account of unpaid processing fees for every child support obligor: (B)(1) The division [of child support in the department of job and family services] shall collect the charge imposed on the obligor under the support order pursuant to division (G)(1) of section 2301.35 of the Revised Code. If an obligor fails to pay the required amount with each current support payment due in increments specified under the support order, the division shall maintain a separate arrearage account of that amount for that obligor. * * *.

*Id.* at *2.

{¶30} The majority in *Burger* concluded that in "[r]eading R.C. 5101.325(B)(1) and R.C. 2301.35(G)(1) in pari materia, we cannot accept the trial court's restrictive

interpretation of the collection of processing fees. *An obligor who fails to pay current support remains statutorily liable for the corresponding accumulation of unpaid processing fees on said support; otherwise, the mandate of R.C. 5101.325(B)(1) is superfluous.* When the obligor later makes an arrearage payment, we find no basis to bar CSEA from assessing thereon a separate processing fee under R.C. 2301.35(G)(1). * * * Moreover, when interpreting statutes, courts '* * * must give due deference to an administrative interpretation formulated by an agency that has accumulated substantial expertise and to which the General Assembly has delegated the responsibility of implementing the legislative command.' *Swallow v. Indus. Comm.* (1988), 36 Ohio St.3d 55, 57." *Id.* at *2 (emphasis added).

{¶31} The Second District Court of Appeals was faced with the same question in *Osborne v. Osborne*, 2nd Dist. Montgomery No. 26624, 2015-Ohio-3382, where the trial court stated the CSEA was not entitled to collect an additional two percent in processing charges on a processing fee arrearage of $301.91 owed to the CSEA. The court relied upon our decision in *Burger, supra*, to find the trial court erred in refusing to allow the CSEA collect the additional two percent processing charge on the processing fee arrearage. *Id.* at ¶ 2.

{¶32} The DCCSEA argues the trial court was without the authority to order the DCCSEA to waive the processing fee arrearage owed by Husband; based on our instructive analysis in *Burger*, we agree. The statutorily mandated purpose of the CSEA is to enforce support orders, oversee the collection of support obligations, and perform other actions associated with child support enforcement. A two percent processing fee has been held to be reasonable to compensate the CSEA for the assumption of the risk

with the handling and disbursement of funds in proportion to the amount of those funds. *Curran v. Kelly*, 9th Dist. Medina No. 10CA0139-M, 2012-Ohio-218, ¶ 13 citing *Granzow*, 54 Ohio St.3d at 38. The history of this case shows that the DCCSEA has been enforcing the parties' support order, overseeing the collection of Husband's support obligations, and performing other actions associated with support enforcement since 2007.

{¶33} We found in *Burger*, which was followed in *Osborne*, that Ohio law permitted the CSEA to collect an additional two percent processing charge on a processing fee arrearage and the trial court could not order the CSEA to waive the collection of the charge. Based on the same statutory provisions, we likewise find the language of R.C. 3119.27, R.C. 3119.28(B), and R.C. 3121.58 limits the trial court's ability to order the DCCSEA to reduce a processing fee arrearage to a zero balance. While Husband and Wife may have reached an agreement as to Husband's spousal support obligation, the DCCSEA has a meritorious claim or defense that it was entitled to the processing fees under Ohio law, regardless of their agreement.

{¶34} The first Assignment of Error of the DCCSEA is sustained.

### Civ.R. 60(B)(5)

{¶35} The third *GTE* factor is whether the DCCSEA is entitled to relief under one of the enumerated factors. The DCCSEA argues it is entitled to relief under Civ.R. 60(B)(5), which allows the trial court to relieve a party from a final judgment for "any other reason justifying relief from the judgment." Civ.R. 60(B)(5) operates as a catch-all provision and "reflects 'the inherent power of a court to relieve a person from the unjust operation of a judgment.'" *Maggiore v. Barensfeld*, 5th Dist. Stark No. 2011CA00180, 2012-Ohio-2909, 2012 WL 2415184, ¶ 35 citing *Dutton v. Potroos,* 5th Dist. Stark No.

2010CA00318, 2011-Ohio-3646, 2011 WL 3057612, at ¶ 49. It is reserved for "extraordinary and unusual case [s]," *Myers v. Myers*, 9th Dist. Summit No. 22393, 2005-Ohio-3800, 2005 WL 1763608, at ¶ 14, and "is not a substitute for the enumerated grounds for relief from judgment [.]" *Id.*

{¶36} The DCCSEA argues it should be entitled to relief from judgment because it was never provided the opportunity to be heard on the issue of waiving Husband's processing charge arrearages owed to the DCCSEA. In *Saari v. Lorain Cty. Child Support Enforcement Agency,* 9th Dist. Lorain No. 10CA009905, 2011-Ohio-2198, the appellate court reversed the trial court's determination that a provision in a prenuptial agreement waiving spousal support was invalid. While the appeal was pending, the trial court ordered the husband to pay spousal support to the wife plus a two percent processing fee to the CSEA for collection and distribution of the spousal support. *Id.* at ¶ 2. After reversal and remand, the trial court ordered the CSEA to reimburse the husband $1,030.23 in processing fees that had been collected for distribution of spousal support. The CSEA filed a motion to intervene and motion to vacate/relief from judgment. *Id.* at ¶ 4. The trial court denied the motion to intervene.

{¶37} On appeal, the CSEA argued it was deprived of due process of law because it was not a party to the litigation, and it was never provided notice or an opportunity to be heard on the issue of whether it should be required to reimburse fees. *Id.* at ¶ 10. The Ninth District Court of Appeals, based on our decision in *Messer v. Messer*, 5th Dist. Licking No. 2005CA00128, 2006-Ohio-4833, agreed and found that the concepts of fundamental fairness and due process demanded that the CSEA should have received notice and an opportunity to be heard. *Id.* at ¶ 11.

{¶38} Based on *Saari*, we find that the DCCSEA was deprived of the due process of law when the trial court failed to provide it with notice of the ad hoc Final Hearing on May 23, 2019 where the DCCSEA could have been heard on the issue of waiving Husband's processing fee arrearage. We reverse the trial court's denial of the DCCSEA's motion for relief from judgment in accordance with the inherent power of a court to relieve a person from the unjust operation of a judgment. *See* Civ.R. 60(B)(5).

{¶39} The second Assignment of Error of the DCCSEA is sustained.

## CONCLUSION

{¶40} Based on the foregoing, we reverse the November 27, 2019 judgment of the Delaware County Court of Common Pleas, Domestic Relations Division and remand this matter to the trial court for further proceedings consistent with this opinion and law.

By: Delaney, J.,

Baldwin, P.J. and

Wise, Earle, J., concur.